IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| MARK S. REESE, SR., *et al.*, <br> Plaintiffs, <br><br> v. <br><br> STERN & EISENBERG MID ATLANTIC, PC, <br> Defendant. | ) <br> ) <br> ) <br> ) Civil No. 3:16cv496 (REP) <br> ) <br> ) <br> ) <br> ) |

REPORT AND RECOMMENDATION

This matter comes before the Court pursuant to 28 U.S.C. § 636(b)(1)(B) on Plaintiffs Mark S. Reese, Sr. and Connie W. Reese's (collectively, "Plaintiffs") Motion for Award of Attorneys' Fees, Costs, and Class Representative Service Awards ("Motion for Fees") (ECF No. 47) filed on April 18, 2017. Senior United States District Judge Robert E. Payne referred the Motion for Fees to the undersigned for a Report and Recommendation after the parties agreed as part of the settlement that the undersigned would review the reasonableness of Class Counsel's request for fees and costs. (ECF No. 46.) For the reasons set forth below, the Court recommends that Class Counsel be awarded $43,337.50 for fees and $746.40 for costs, and that Named Plaintiffs, Mark S. Reese, Sr. and Connie W. Reese, be awarded $1,500.00 each for class representative service awards.

I. BACKGROUND

On June 27, 2016, Plaintiffs initiated this litigation when they filed a Class Action Complaint. (ECF No. 1.) Plaintiffs alleged that Defendant Stern & Eisenberg Mid Atlantic, PC, ("Defendant") violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by sending collection notices to mortgage debtors that failed to inform them that, if a debtor

disputed the debt, he or she must submit such dispute "in writing." (Compl. ¶¶ 15-23.) On November 8, 2016, the District Court certified the Settlement Class. (ECF No. 25.) The Class consists of 141 individuals. (Pls.' Mem. in Supp. of Am. Consent Mot. for Order of Prelim. Approval ("Approval Mem.") (ECF No. 39) at 6-7.)

On November 21, 2016, the undersigned conducted a settlement conference with the parties. At that time, the parties reached a settlement and memorialized the terms of their agreement in a Memorandum of Understanding ("MOU"). As part of the settlement, the parties further agreed that § 1692k(a) of the FDCPA entitled Plaintiffs to an award of reasonable attorneys' fees, and that Class Counsel would submit their lodestar request to the undersigned for a Report and Recommendation to the District Court. (Approval Mem., Am. Settlement Agreement ("Settlement Agrmt.") (ECF No. 39-1) ¶¶ 8.1-8.2.) The Motion seeks an award of attorneys' fees in the amount of $71,537.50, costs in the amount of $746.40, and Service Awards in the amount of $1,500.00 for each of the two Named Plaintiffs.

## II. LEGAL STANDARD

### A. Fee Awards for Class Counsel.

Class counsel play a vital role in protecting the rights of class members. Due process requires that class counsel adequately represent class members, because settlements preclude further litigation by absent class members. *Berry v. Schulman*, 807 F.3d 600, 612 (4th Cir. 2015) (citing *In re Jiffy Lube*, 927 F.2d 155, 158 (4th Cir. 1991)). To that end, Federal Rule of Civil Procedure 23(a)(4) requires that a court find at the certification level that class counsel can fairly and adequately represent the interests of all class members. *Berry*, 807 F.3d at 612. This requirement, coupled with the settlement approval requirement in Rule 23(e), demonstrates the heightened importance of counsel in the class context.

2

The important role of class counsel continues in the consumer protection context as well. Class counsel help protect consumers by enforcing the rights created by the FDCPA and other consumer protection statutes. In creating an extensive set of private rights, Congress relies on the private attorney-general concept to enforce the FDCPA. *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 393 (4th Cir. 2014) (citing *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995)). Congress's inclusion of the fee-shifting provision, § 1692k(a)(3), furthers the enforcement in two ways. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 263 (1975) (explaining that Congress allows for reasonable attorneys' fees in statutes to encourage private litigation as a way to implement public policy). First, it encourages debt collectors to obey the law; otherwise, they run the risk of paying plaintiffs' attorneys' fees in addition to damages. *Russell*, 763 F.3d at 388-89. Second, by deviating from the American Rule,[1] the statute incentivizes attorneys to prosecute these cases that may otherwise be ignored due to minimal fees for the attorney. *Fariasantos v. Rosenberg & Assocs., LLC*, 303 F.R.D. 272, 276 (E.D. Va. 2014) (noting that, if not for the class action, many individual FDCPA claims would go unprosecuted due to the often-minimal recovery available).

Here, Class Counsel achieved a successful result for their consumer clients, and the Court must ensure that counsel receive compensation for their work. The statute does not, however, allow for attorneys' fees to be determined by Class Counsel. Instead, it allows for "reasonable attorney[s'] fee[s] as determined by the court." § 1692k(a)(3). The Court must therefore determine what constitutes a reasonable attorneys' fee for this action. *See Allen v. United States*, 606 F.2d 432, 435-36 (4th Cir. 1979) ("Associated with a court's power to allocate part of the recovery to counsel is its obligation to limit the fee to a reasonable amount. A court abuses its

---

[1] Under the American Rule, parties bear the responsibility for their own attorneys' fees regardless of the outcome of the case. *Alyeska Pipeline*, 421 U.S. at 247.

3

discretion if it allows a fee without carefully considering the factors relevant to fair compensation.").

### B. Method of Computing Attorneys' Fees.

Courts assess a fee award using a reasonableness standard. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978); *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 243 (4th Cir. 2010); 15 U.S.C. § 1692k(a)(3). The case law construing a reasonable attorneys' fee award applies across fee-shifting statutes using similar language. *Doe v. Chao*, 435 F.3d 492, 504 (4th Cir. 2006). Moreover, because the FDCPA does not prescribe a method for computing a reasonable attorneys' fee award, courts have flexibility in choosing a methodology to assess the reasonableness of a fee request. *See In re Microstrategy, Inc.*, 172 F. Supp. 2d 778, 785-86 (E.D. Va. 2001) (determining that the court had flexibility, because the fee-shifting provision in the Private Securities Litigation Reform Act did not specify a method); *see also* 15 U.S.C. § 1692k(a)(3) (not specifying a method for computing the fee). Courts generally choose between the lodestar method and the percentage-of-recovery method. *In re Microstrategy, Inc.*, 172 F. Supp. 2d at 786.

Courts often favor the percentage method of computation. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 759 (S.D. W. Va. 2009); *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 260 (E.D. Va. 2009). Here, as part of the settlement terms, the parties agreed that the Court would employ the lodestar method (MOU ¶ 4) — and for good reason. As previously stated, the fee-shifting provision of the FDCPA encourages attorneys to bring consumer protection class actions that, because of their lower monetary value, might otherwise go untouched. *Fariasantos*, 303 F.R.D. at 276. This is such a case. The Court notes, however, that had the percentage-of-recovery method been

employed, an award of $3,290 based on one-third of the total class recovery ($9,870) would constitute a reasonable fee.[2] Given the parties' agreement, the Court will determine the fee award using the lodestar method.[3]

Under the lodestar method, the Fourth Circuit has outlined a three-step framework. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013), *as amended* (Jan. 23, 2014). First, the Court calculates the lodestar figure by multiplying the hours reasonably expended by a reasonable hourly rate, and then the Court can increase or decrease that figure according to a variety of factors. *Id.* (citing *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009)). These factors include:

(1) the time and labor expended;
(2) the novelty and difficulty of the questions raised;
(3) the skill required to properly perform the legal services rendered;
(4) the attorney's opportunity cost in pressing the instant litigation;
(5) the customary fee for like work;
(6) the attorney's expectations at the outset of the litigation;

---

[2] The Court could award a percentage of the amount recovered by the class. *In re Microstrategy, Inc.*, 172 F. Supp. 2d at 785-87. Indeed, the Supreme Court and District Courts within this Circuit typically recognize the percentage-of-recovery method in class actions involving a common fund. *Boeing Co.*, 444 U.S. at 478 (recognizing the propriety of assessing fees through a percentage of the common fund); *Jones*, 601 F. Supp. 2d at 759 ("The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases."); *In re Mills Corp. Sec. Litig.*, 265 F.R.D. at 260 ("While the Fourth Circuit has not definitively answered this debate, other districts within this Circuit, and the vast majority of courts in other jurisdictions consistently apply a percentage of the fund method for calculating attorneys' fees in common fund cases."). A fee award of one-third of the class settlement would be appropriate. *See Thomas v. FTS USA, LLC*, No. 3:13cv825, 2017 WL 1148283, at *5 (E.D. Va. Jan. 9, 2017) (finding a fee award of one-third of the settlement fund reasonable), *adopted by* 2017 WL 1147460 (E.D. Va. Mar. 27, 2017). However, this case does not involve a common fund, and the parties agreed to a lodestar fee award.

[3] Defendant urges the Court to assess reasonable fees under the percentage method, (Def.'s Mem in Opp'n to Pls.' Mot. for Attys' Fees, Costs, and Class Representative Serv. Awards ("Def.'s Mem.") (ECF No. 49) at 2), but it agreed otherwise in the MOU. And, the MOU is a binding contract between the parties. *LongView Int'l Tech. Sols., Inc. v. Lin*, No. 160228, 2017 WL 1396062, at *2 (Va. Apr. 13, 2017) (holding that a terms sheet that the parties entered into after twelve hours of mediation constituted a binding contract).

5

(7) the time limitations imposed by the client or circumstances;
(8) the amount in controversy and the results obtained;
(9) the experience, reputation, and ability of the attorney;
(10) the undesirability of the case within the legal community in which the suit arose;
(11) the nature and length of the professional relationship between attorney and client; and,
(12) attorneys' fees awards in similar cases.

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (adopted by the Fourth Circuit in *Barber*, 577 F.2d at 226). Of course, some factors may have nothing to add in a given case, but the Court should consider those that apply. *In re Abrams & Abrams*, 605 F.3d at 244. In applying the factors, the Court gives the most weight to the results obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Chao*, 435 F.3d at 506 ("the most critical factor in determining the reasonableness of a fee award is the degree of success obtained") (additional citation omitted). Next, the Court must subtract fees for time "spent on unsuccessful claims unrelated to successful ones." *McAfee*, 738 F.3d at 88 (quoting *Robinson*, 560 F.3d at 244). Finally, the Court may adjust the fees, awarding "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.*

### III. APPLICATION

**A. Reasonable Attorneys' Fees.**

In assessing Plaintiffs' lodestar request, the Court will consider the relevant *Johnson* factors and focus on the results obtained as well as the time and labor expended. In doing so, the Court notes that Defendant acknowledges Class Counsel's "extensive experience" with consumer protection litigation. (Def.'s Mem. at 3.) Indeed, this Court has recently noted the commendable reputation and ability of two members of Class Counsel in another consumer protection action. *Thomas*, 2017 WL 1148283, at *5. That acknowledgment extends equally to Class Counsel here as well.

6

In conducting the lodestar analysis, the Court will multiply the number of hours that Class Counsel reasonably expended by a reasonable hourly rate. Here, Defendant does not challenge the hourly rates requested by Class Counsel, and the Court finds those rates reasonable and aligned with the prevailing market rates in Richmond and other courts in this District. *See, e.g., Denton v. PennyMac Loan Servs., LLC*, No. 4:16cv32, 2017 WL 2113138, at *13 (E.D. Va. May 15, 2017) (finding hourly rates of $425 and $575 reasonable); *Thomas*, 2017 WL 118283, at *13 (finding reasonable hourly rates of $675 and $450 for counsel and hourly rates of $200 and $125 for paralegals in an FCRA class action); *Bralley v. Carey*, 2011 WL 4703098, at *2, *4 (E.D. Va. Sept. 16, 2011) (finding $425 a reasonable hourly rate in an individual FDCPA case), *adopted by* 2011 WL 4704216 (E.D. Va. Oct. 4, 2011); *Randle v. H&P Capital, Inc.*, 2010 WL 2944907, at *8-9 (E.D. Va. July 21, 2010) (finding the prevailing market rate in Richmond for similar services between $300 and $600 per hour and awarding fees based on hourly rates of $425 and $450 in an FDCPA putative class action that settled on an individual basis).

Defendant does, however, contest the number of hours claimed by Class Counsel as "excessive" and unreasonable. (Def.'s Mem. at 5-7.) Specifically, Defendant challenges the time that Class Counsel purports to have invested in motions practice, given that Plaintiffs filed only two motions, both unopposed, before the instant Motion for Fees. (Def.'s Mem. at 5-6.) To analyze the hours reasonably expended, the Court considers the time and labor expended. *Denton*, 2017 WL 2113138, at *13 (citing *Barber*, 577 F.2d at 226 n.28).

1. Reasonable Number of Hours Expended on Motions Practice.

Class Counsel have submitted a time report stating that, among three attorneys and one paralegal, they devoted sixty-three (63) hours to motions practice in this matter. (Pls.' Mem. in Supp. of Mot. for Award of Attys' Fees, Costs, and Class Representative Serv. Awards ("Pls.'

Mem.") (ECF No. 48), Decl. of Leonard A. Bennett ("Bennett Decl.") (ECF No. 48-1), Ex. A to Bennett Decl. ("Time Report") (ECF No. 48-2).) As the party seeking fees, Plaintiffs bear the burden to show the reasonableness of the number of hours expended. *Randle v. H & P Capital, Inc.*, 513 F. App'x 282, 283 (4th Cir. 2013) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). Further, Class Counsel must "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Denton*, 2017 WL 2113138, at *14 (citing *Hensley*, 461 U.S. at 437). The Court will reduce the number of hours where Class Counsel submits "inadequate" documentation. *Denton*, 2017 WL 2113138, at *13 (citing *Hensley*, 461 U.S. at 434). Here, the submission by Class Counsel in support of the hours expended is wholly inadequate and summary.[4]

Plaintiffs offer affidavits from two members of Class Counsel, Leonard A. Bennett, Esq., and Dale W. Pittman, Esq., to support the lodestar request. (Pls.' Mem. at 9-10; Bennett Decl. ¶¶ 17, 28-32, 36; Time Report; Decl. of Dale W. Pittman ("Pittman Decl.") (ECF No. 48-3) ¶¶ 18-21, 32-33.) Regarding the hours expended, Mr. Pittman estimated the time that he and his paralegal, Karen A. Graham, spent on this matter by task, including 9.4 hours devoted to motions practice. (Pittman Decl. ¶ 33.) Mr. Bennett seeks reimbursement for 53.6 hours of work performed by himself and Craig C. Marchiando, Esq. (Bennett Decl. ¶ 21; Time Report.) Class Counsel compiled these estimates into a chart delineated by broad tasks. (Time Report.) These

---

[4] Plaintiffs aver that Class Counsel spent time only on "unavoidable" and "necessary" tasks throughout the relatively brief litigation of this case. (Pls.' Mem. at 10.) Finding no evidence of unnecessary litigation, the Court agrees with Plaintiffs on this point. Defendant argues that Plaintiffs "could have had the same settlement" reached during the settlement conference "immediately after they filed suit." (Def.'s Mem. at 8.) Yet, Defendant provides no evidence that it offered a recovery of $70 per class member at any time before the settlement conference, let alone at the outset of litigation. Further, Defendant's counteroffer, made three days before the settlement conference, belies Defendant's own argument. As the settlement judge, the undersigned has knowledge that Defendant offered far less per class member than the amount ultimately agreed to by the parties on November 21, 2016.

condensed approximations offer no detail to allow the Court to review in a meaningful way the time that Class Counsel purports to have *reasonably* spent on these motions.

A review of the docket shows only one uncontested motion filed by Plaintiffs before the case settled — Plaintiffs' Consent Motion for Class Certification. (ECF No. 21.) Mr. Bennett filed that motion. After the case settled, Plaintiffs filed another uncontested motion — their Consent Motion for Preliminary Approval of Class Action Settlement. (ECF No. 34.) Mr. Bennett filed that motion as well. Finally, Plaintiffs filed their Motion for Fees — the one contested motion in the case — which, again, Mr. Bennett filed. (ECF No. 47.) Nothing in the docket sheet or in any submission filed by Class Counsel supports a fee award for motions practice by anyone other than Mr. Bennett.

Consequently, the Court strikes Plaintiffs' request for fees related to motions practice for Mr. Pittman, Mr. Marchiando and Ms. Graham. After that reduction, Plaintiffs' fee request remains as follows: $10,057.50 for Mr. Bennett; $17,600 for Mr. Pittman; $12,960 for Mr. Marchiando; and $2,720 for Ms. Graham, for a total of $43,337.50. The Court finds the remaining hours expended by Class Counsel reasonable given (1) their commendable experience, reputation and ability in litigating claims under the FDCPA and other consumer protection statutes and (2) the straightforward nature of the issues presented and questions raised by this case.

2. The Results Obtained.

The results obtained play an important role in a fee award. *Hensley*, 461 U.S. at 436; *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 629 (4th Cir. 1995) (applying *Hensley* to the FDCPA). The Settlement Class here obtained a very favorable result. Each class member will receive a cash payment of $70 without enduring a claims process. (Approval Mem. at 7.) Given

9

the unresolved questions of liability and Defendant's net worth — which, if negative, would have resulted in no recovery for the Class — class members could have received significantly less, if anything, after a trial. *See* 15 U.S.C. § 1692k(2)(B) (capping recovery for all class members other than named plaintiffs to the lesser of $500,000 or 1% of the net worth of the debt collector). The parties settled before engaging in extensive litigation or formal discovery and with only one contested motion (the Motion for Fees). Class members will benefit from that expeditious resolution of the case. The successful results obtained for the Class support the lodestar as adjusted above.

      3. Unsuccessful Claims.

At the second step of the lodestar analysis, the Court subtracts fees for time "spent on unsuccessful claims unrelated to successful ones." *McAfee*, 738 F.3d at 88 (quoting *Robinson*, 560 F.3d at 244). For purposes of settlement of awarding attorney's fees, the parties considered Plaintiffs "the successful party" in this matter. (Approval Mem. at 8; Settlement Agrmt. ¶ 8.1.) Given that agreement, and finding no unsuccessful claims asserted by Plaintiffs, the Court will not reduce the fee award at this step.

      4. Relationship between the Fee Award and the Degree of Success.

Finally, the Court may adjust the fees, awarding "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F.3d at 88 (quoting *Robinson*, 560 F.3d at 244). Courts may reduce an award when the relief, as compared to the entire litigation, remains limited. *See McAfee*, 738 F.3d at 92, 94 (reducing a fee award of approximately 109 times the amount of recovery due to the "limited success" of the plaintiff who recovered out-of-pocket expenses but no other damages). Though the Court must consider Plaintiffs' degree of success, no direct proportionality requirement exists between the fee award

the amount of recovery. *Denton*, 2017 WL 2113138, at *18 (citing *Croy v. E. Hall & Assocs., PLLC*, 2007 WL 676698, at *3 (W.D. Va. 2007)).

Here, the fee award ($43,337.50) equals roughly 4.4 times the amount of the total recovery to the Class ($9,870). Given the policy goals behind the fee-shifting provision of the FDCPA, but without encouraging unnecessary litigation meant simply to run up the meter, the Court finds the fee award reasonable in relation to the recovery. As discussed above, Plaintiffs enjoyed a great degree of success from the settlement reached, given the potential hurdles that they would face taking this case to trial. That success supports the fee award, after accounting for the unsupported motions practice hours, and does not warrant any further downward departure.

Consequently, under the lodestar method, the Court recommends that Class Counsel be awarded attorneys' fees in the amount of $43,337.50.

### B. Costs and Class Representative Service Awards.

In addition to fees, Class Counsel requests $746.40 in costs, to which Defendant does not object. Finally, Class Counsel seeks service awards of $1,500 for each of the Named Plaintiffs as class representatives, for a total of $3,000. Defendant does not oppose this amount either. (Def.'s Mem. at 1 n.1.) Because the parties agree, and finding the amounts reasonable, the Court recommends awarding Class Counsel their costs and Named Plaintiffs their service awards as requested.

### IV. CONCLUSION

For the reasons set forth above, the Court recommends that Class Counsel be awarded $43,337.50 for fees and $746.40 for costs, and that Named Plaintiffs, Mark S. Reese, Sr. and Connie W. Reese, be awarded $1,500.00 each for class representative service awards.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: June 6, 2017