```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE EASTERN DISTRICT OF VIRGINIA

 3                            RICHMOND DIVISION

 4

 5     ---------------------------------------
                                              :
 6      MARK S. REESE, SR., on behalf of      :
        himself and all others similarly      :   Civil Action No.
 7      situated                              :   3:16cv496
                                              :
 8      vs.                                   :
                                              :   August 31, 2017
 9      STERN & EISENBERG MID-ATLANTIC, PC    :
                                              :
10     ---------------------------------------

11

12            COMPLETE TRANSCRIPT OF THE MOTIONS HEARING

13               BEFORE THE HONORABLE ROBERT E. PAYNE

14                    UNITED STATES DISTRICT JUDGE

15
       APPEARANCES:
16
       Craig Marchiando, Esquire
17     Leonard A. Bennett, Esquire
       Consumer Litigation Associates, PC
18     763 J Clyde Morris Boulevard
       Suite 1A
19     Newport News, Virginia  23601
       Counsel for the plaintiffs
20
       Leland H. Jones, IV, Esquire
21     Wiley Rein, LLP
       1776 K Street NW
22     Washington, D.C.  20006
       Counsel for the defendant

23

24                         Peppy Peterson, RPR
                          Official Court Reporter
25                      United States District Court
```

```
 1                    P R O C E E D I N G S

 2

 3            THE CLERK:  Case number 3:16CV496, Mark S. Reese,
 4   Sr., et al., versus Stern & Eisenberg Mid Atlantic, PC, et al.
 5   The plaintiffs are represented by Leonard Bennett and Craig
 6   Marchiando.  The defendants are represented by Leland Jones.
 7   Are counsel ready to proceed?
 8            MR. MARCHIANDO:  Plaintiffs are.
 9            MR. JONES:  Defendant is ready, Your Honor.
10            THE COURT:  All right.  This is a motion for
11   preliminary approval of a class action settlement.
12            MR. MARCHIANDO:  Your Honor, this is final approval
13   for this settlement.
14            THE COURT:  Excuse me.  I'm sorry.  I was looking at
15   the wrong -- final approval is ECF number 56 and the
16   attorneys -- appeal of attorneys' fees.
17            MR. MARCHIANDO:  That's correct, Your Honor.
18            THE COURT:  Let's take the attorneys' fees first.
19            MR. MARCHIANDO:  Certainly.  Your Honor --
20            THE COURT:  And let me just give you some instruction
21   here maybe all of you need to pay attention to.  You can't take
22   any comfort out of the citation you make to the --
23            MR. MARCHIANDO:  *Karnette* case, Your Honor?
24            THE COURT:  Yeah.  The history of that case is pretty
25   simple.  There's a bunch of detailed reports that were
```

1  submitted, and I couldn't make heads or tails out of them, what
2  they were doing because they were so skimpy, and I made them
3  categorize them.  Then I had an integrated set of documents to
4  review.
5           I didn't say you could just get away with sloppy
6  time-keeping and categories for making -- you have to offer up
7  the background data so that the other side can object to any of
8  it if they want to and then do the categorization.  So this
9  isn't right.  And in addition to that, I can't make heads or
10 tails out of these attorneys' fees petitions.
11          I can't understand them.  It's just not going to
12 work, and there are two ways to deal with that:  An attorney's
13 fee award of zero because you haven't met the requirements or
14 you do it again and do it right.
15          MR. MARCHIANDO:  I'd like the second option, please,
16 Your Honor.
17          THE COURT:  And I'm going to tell you, you have to
18 explain and make some sense out of some of this stuff.  Here's
19 what happened in this case:  Now, we've got $7,755.  Remember,
20 this is against an award of a small amount for the class.
21 14.10 hours of Mr. Pittman's in pre-filing preparation and
22 pleading work.  Why?  Why is that -- why is 14 hours
23 appropriate for that?  I can't imagine that that's appropriate.
24          You have 51.8 hours listed as motions practice, and
25 most of the motions were unopposed, and you knew they were

1   going to be unopposed.  And, in addition to that, we had to
2   tell you several times, by phone and otherwise, what to do.
3   You don't get to bill time for correcting something that you
4   fouled up.  That's just not allowed.
5           And the general categories are listed as motions
6   practice, and then the other labels are very vague and very
7   unhelpful, particularly given that you don't have the backup
8   submitted with it.
9           So with that in mind, maybe you'd like to file an
10  application.  So what does that do -- a revised application, or
11  we can arbitrarily decide upon a figure today that seems
12  reasonable.  What do you think might be a reasonable
13  settlement, Mr. Jones?  You are over there moaning and groaning
14  in your papers about the fee, but you don't really say what you
15  think is appropriate, I don't think, other than to say the
16  magistrate judge is appropriate.
17          Well, suppose he's wrong, and I think the magistrate
18  judge erred in this situation in saying that the evidence
19  supported only the filing done by the person who appeared on
20  the ECF notice because of the way the ECF system works.  That
21  doesn't necessarily provide a good barometer for making an
22  attorneys' fees award.
23          But is it your judgment somewhere around 40- or
24  $50,000 is a fair fee or what?  Come to the lectern.  Maybe we
25  can agree on something.  You have reviewed their fees, haven't

```
 1   you?
 2          MR. JONES:  Yes, Your Honor.
 3          THE COURT:  Did you review the background data that
 4   they provided?
 5          MR. JONES:  Only the data that was submitted in the
 6   filings before the Court and with respect to Judge Novak's
 7   report and recommendation --
 8          THE COURT:  I thought with the magistrate judge, they
 9   actually submitted underlying time records, didn't they?
10          MR. JONES:  No, Your Honor, I don't believe so.
11   Maybe I'm incorrect.
12          MR. MARCHIANDO:  Your Honor, we submitted the
13   underlying time records with our objections to the R&R.  So the
14   first set was the summary and then --
15          THE COURT:  You never did give them to the magistrate
16   judge?
17          MR. MARCHIANDO:  Correct.
18          THE COURT:  Have you looked at the underlying time
19   records that they submitted in their -- with the objections?
20   They were submitted with the objections, but I thought they
21   were somehow submitted beforehand.  Do you have anything, any
22   view on that, what would be a fair and reasonable attorneys'
23   fees in this case?
24          MR. JONES:  I think, Your Honor, our position is
25   still the same of I understand Your Honor's position --
```

1                THE COURT:  But your position is based on an
2     erroneous premise, and that is that it's appropriate to do it
3     the way the magistrate judge did it.  I don't think it is.
4                MR. JONES:  Yes, Your Honor.
5                THE COURT:  So I'm asking you independent of that
6     notion, do you have some judgment as to what might be a fair
7     attorneys' fees request looking at -- having looked at the
8     detailed time records that they submitted in connection with
9     the objection?
10               MR. JONES:  Your Honor, with respect to the amount
11    that is appropriate, we took issue with respect to the amount
12    that was incurred in the motions practice which, as Your Honor
13    indicated, was uncontested motions of approximately 60 hours in
14    total.
15               THE COURT:  Do you want to strike it all?
16               MR. JONES:  No, Your Honor.
17               THE COURT:  How did you come up with what -- let me
18    see what you say you think is a fair figure here.  Maybe I
19    misunderstood you.  Where in your paper is your exact figure
20    that you propose?
21               MR. JONES:  We proposed an exact figure, Your Honor,
22    before Magistrate Judge Novak.  We recommended, given the
23    amount of the fees of -- the award to the class of $9,870 that
24    it be based on a proportion of that number.  Given the backup I
25    think with 60 hours, it would be appropriate, given the

```
 1  uncontested nature of the motions, that the motions hours
 2  should be between 20 and 25 hours would have been appropriate
 3  given the plaintiff's counsel's position that they had to do
 4  independent work associated with the class certification
 5  motion, the motion for preliminary approval --
 6            THE COURT:  Did you figure that out mathematically as
 7  to what that would be?
 8            MR. JONES:  Not mathematically, Your Honor.
 9            THE COURT:  How can I do it if you don't do it?  I
10  don't know what basis you are using to get to the -- what you
11  say that yields.  You don't have a figure, do you?
12            MR. JONES:  No, Your Honor.
13            THE COURT:  I didn't think I saw one except the one
14  the magistrate judge awarded.  Can I approve the settlement
15  without approving the fees?
16            MR. MARCHIANDO:  Yes, you can.
17            THE COURT:  The settlement agreement without
18  approving the fees?
19            MR. MARCHIANDO:  Yes, you may.  The settlement
20  agreement allows for submission of the fees as we've done, so I
21  don't think there's anything that stands in the way of
22  approving one independent of the other.
23            THE COURT:  Who's paying these fees?
24            MR. MARCHIANDO:  The defendant is paying the fees
25  separately, Your Honor.
```

```
 1                 THE COURT:  Out of their pocket.
 2                 MR. MARCHIANDO:  Pardon?
 3                 THE COURT:  Out of their pocket.
 4                 MR. MARCHIANDO:  Correct.  This is not coming from
 5     any class member's recovery.  There's no cost of administration
 6     or anything coming out of that at all.  It's all being
 7     separately paid by the defendant.
 8                 THE COURT:  All right.  You're going to re-file an
 9     application for attorneys' fees, and you're going to look at
10     the figures, the re-filed figures, and you give me a figure and
11     you give me a figure, Mr. Jones.
12                 MR. JONES:  Yes, Your Honor.
13                 THE COURT:  All right.  Then we'll go from there.  I
14     want you, when you are doing it, I don't want a bunch of -- I
15     don't want a whole lot of lawyers --
16                 MR. MARCHIANDO:  Understood, Your Honor.
17                 THE COURT:  -- accounted for.  The day of having too
18     many lawyers feeding at the trough is over.
19                 MR. MARCHIANDO:  Understood, Your Honor.
20                 THE COURT:  It's just getting out of hand. One case
21     I had just recently there were four or five law firms for the
22     plaintiff.  That's unnecessary.  You can't justify that
23     anymore.  No private client would approve that kind of thing.
24     Nobody would.  You look at how lawyers' fees are being judged
25     now, they're being judged in a different way in the
```

```
 1  marketplace, so you have to adjust your claim to fit the
 2  marketplace.
 3              MR. MARCHIANDO:  Understood, Your Honor.
 4              THE COURT:  All right.  Let's go through the motion,
 5  number 56.
 6              MR. MARCHIANDO:  Certainly, Your Honor.  I should
 7  begin by apologizing for the confusion that I've likely created
 8  with Mr. Stefany.  I was of the belief when he spoke to me
 9  about when Mr. Bennett would arrive that there was something
10  independent that the Court needed Mr. Bennett for, not this
11  motion.  It was always intended that I would argue it, and if I
12  created confusion with the Court's schedule this morning, I
13  apologize.  I should have spoken up and advised Mr. Stefany --
14              THE COURT:  We're fine.  We just moved on.  Got other
15  people in line.
16              MR. MARCHIANDO:  Certainly, Your Honor.
17              THE COURT:  Thank you, though.
18              MR. MARCHIANDO:  The settlement is virtually
19  unopposed.  There is a cash award going directly to class
20  members.  We were able to find --
21              THE COURT:  Is this firm still doing this practice,
22  this kind of thing?
23              MR. MARCHIANDO:  My understanding is they've changed
24  their letter, Your Honor.
25              THE COURT:  All right.
```

```
 1              MR. MARCHIANDO:  So all class members are going to
 2   get a cash payment of $70.  We were able to find 139 of 141
 3   class members, find good addresses for them, so about
 4   98.5 percent of the class members got their notice.  No one
 5   said anything about -- there were no comments about --
 6              THE COURT:  No opt-outs, no objections.
 7              MR. MARCHIANDO:  Correct, no opt-outs, no objections,
 8   no comments or objections from the Attorney General of the
 9   United States or the Attorney General of Virginia.
10              This is as neatly packaged a settlement, I think, as
11   we can present to Your Honor.  There's no opposition
12   whatsoever.  The terms are straightforward.  Class members
13   don't have to do anything to receive their money.  Anything
14   that's left over after a second distribution to class members
15   that cashed their first checks, that money will be given to the
16   Virginia Poverty Law Center as agreed by the parties and with
17   Court approval, of course.
18              There is not any reduction in the amount class
19   members will receive for attorneys' fees or costs, our costs or
20   cost of settlement administration.  All that's being separately
21   paid by the defendant.
22              THE COURT:  What has the cost of administration been?
23              MR. MARCHIANDO:  I think it was around $7,500.
24              MR. JONES:  Yes, Your Honor.  That has been the
25   estimate, and I believe now we've been billed on a monthly
```

1  basis, and I think we're probably less than 1,500 or $2,000 as
2  of right now.
3           THE COURT: You're going to stay within the target,
4  it looks like.
5           MR. JONES: Yes, Your Honor, well within that.
6           THE COURT: What are you talking about, uncashed
7  checks? Each class member -- what is the total class number,
8  100 and what?
9           MR. MARCHIANDO: 141, Your Honor.
10          THE COURT: And you got good addresses for 139?
11          MR. MARCHIANDO: That's right. So I didn't
12  articulate very well the payment process. So everyone will get
13  their check, and then any money that's unclaimed, the first
14  round of checks that's not cashed, there will be a second
15  distribution of whatever is left equally to the class members
16  that did cash their first checks.
17          THE COURT: What happens to the $140 for the two that
18  you didn't get notice? Is that thrown in that pot, too?
19          MR. MARCHIANDO: Correct. So everyone will get a
20  little more than $70.
21          THE COURT: All right. Anything else? Do you have
22  anything to say about the settlement?
23          MR. JONES: No, Your Honor.
24          THE COURT: All right. Well, I find that under the
25  *Jiffy Lube* factors and in general, the settlement is fair and

1    reasonable given the circumstances -- I think the relative
2    strength of the plaintiffs' case was strong.  In terms of the
3    difficulties of proof, as to the defense there weren't a lot of
4    difficulties, but it was whether or not it was enough money to
5    pay anybody anything, or else what would happen if the case
6    went to trial.
7                There's always, of course, the risk of litigation --
8    of losing no matter what a Court assesses as the strength of
9    the litigation, so that had to be taken into account, and, of
10   course, the solvency of the defendant is a factor and the
11   likelihood of recovery on a bigger judgment, and I think that
12   was a major force in arriving at what the Court concludes to be
13   a reasonable settlement in the case.
14                The degree of opposition to the settlement is zero.
15   There is no opposition to it.  So the case was settled at the
16   right time in its course.  Discovery had been conducted to the
17   extent it needed to be conducted, and the negotiations were
18   arms'-length negotiations presided over by the magistrate
19   judge, and counsel is experienced in the area, and that assists
20   with assessing how fair it is.  It's arrived at by lawyers with
21   knowledge about the topics to be litigated.
22                So the order of the settlement will be approved.
23   Attorneys' fees will be briefed.  When are you going to file a
24   brief on the -- make application, Mr. Marchiando?
25                MR. MARCHIANDO:  File it in two weeks?

```
 1              THE COURT:  I just need to know for the order, that's
 2   all.
 3              MR. MARCHIANDO:  We can file it --
 4              THE COURT:  Two weeks, what is that?
 5              MR. MARCHIANDO:  We're turning over the calendar, so
 6   I can't --
 7              THE CLERK:  September 14th.
 8              THE COURT:  September 18 then is a Monday.  And then
 9   your objections, if you have any, and I guess -- so I'm going
10   to, for the reasons I've said, that I don't think that the
11   magistrate judge's opinion arriving at the $43,000 fee was
12   based on the right analytical approach, I'm going to sustain
13   the objections and direct that you submit the attorneys' fees
14   application directly to me rather than going back through the
15   process again.
16              I've already reviewed a lot of these things,
17   information in order to review the appeal.  So I'll just go on
18   and take it back and consider it.  Is that all right with both
19   of you, because I think your agreement said it should go to the
20   magistrate judge.
21              MR. MARCHIANDO:  That's fine with us, Your Honor.
22              THE COURT:  Is that all right with you?
23              MR. JONES:  Yes, Your Honor.
24              THE COURT:  I'll do it that way then.  When are you
25   going to file your response to his new application, Mr. Jones?
```

```
 1   He's filed on September 18th.
 2            MR. JONES:  Your Honor, if we could have 14 days
 3   should be sufficient, Your Honor.
 4            THE COURT:  It will be October 2nd; is that all
 5   right?
 6            MR. JONES:  Yes, Your Honor.
 7            THE COURT:  And then any reply will be on
 8   October 9th.
 9            THE COURT:  Is this proposed order on something you
10   can send to my office on a computer so we can use it as -- I'm
11   going to have to have some notification.  I don't want to have
12   to redo the whole thing.
13            MR. MARCHIANDO:  Yes, Your Honor, we can definitely
14   do that.
15            THE COURT:  All right, that's fine.  Is there
16   anything else that needs to be done in this case at this time?
17            MR. MARCHIANDO:  No, Your Honor.
18            THE COURT:  And this order will be -- these orders
19   will be entered, and we'll go from there.  Thank you very much.
20   We'll take a 20-minute recess.
21
22                      (End of proceedings.)
23
24
25
```

1
2
3        I certify that the foregoing is a correct transcript
4   from the record of proceedings in the above-entitled matter.
5
6
7   _____/s/_____                    _____
    P. E. Peterson, RPR                      Date
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25